ANITA RODDY-EDEN, Plaintiff, *v.* MILTON BERLE, Defendant.

Supreme Court, Special Term, New York County, November 29, 1951.

*Rosenberg & Rosenberg* for defendant.

*Amos S. Basel* for plaintiff.

EDER, J. Motion to dismiss complaint for legal insufficiency in failing to state facts sufficient to constitute a cause of action, and upon the further ground that the alleged agreement pleaded in the complaint is against public policy and hence unenforcible.

The action is to recover damages alleged to have been sustained by reason of breach of a contract entered into between the parties, dated October 31, 1950.

The complaint alleges plaintiff is the authoress of a certain novel originally entitled '' Sit Still My Soul '', and presently entitled, '' The Kneeling God ''.

Defendant, it is averred, at all times in concern, was and still is a famous comedian and theatrical performer with a vast public of admirers and fans, and has acquired great prominence in all fields of entertainment, including the legitimate stage, motion pictures, radio and television.

It is alleged by plaintiff that in February, 1950, defendant requested plaintiff to write a serious novel to be published under his name as sole author, in order to gain recognition in the literary field; that he advised plaintiff that if she agreed to write such novel, that the finished work would be published under defendant's name as the sole author thereof, '' thereby insuring the likelihood of a large sale '' because of defendant's vast public of admirers and fans and because of his many public appearances before huge audiences, which afforded '' opportunities to exploit and sell said book '' and thereby insure its success; that plaintiff and defendant agreed to divide equally all profits derived from the work; that plaintiff's share would be far greater than if the book were published under plaintiff's authorship.

The complaint alleges that plaintiff proceeded to write and complete the book; that she commenced in February, 1950, and finished the work in July, 1950, when she delivered to defendant a copy of her complete work. It is then alleged that on or about October 31, 1950, the parties entered into a written agreement, dated that day, which is made a part of the complaint, marked Exhibit '' A ''.

It is further alleged that defendant gave interviews to the press and issued statements announcing that he was the sole author of said book and that it was soon to be published.

That in breach and violation of the agreement defendant advised plaintiff that he would not permit her work to be published and had withdrawn it from the market; that plaintiff has performed all the terms and conditions of said contract on her part to be performed, and damages are sought to be recovered because of such breach.

In sum, therefore, plaintiff seeks to recover damages allegedly sustained by her by reason of defendant's refusal to permit a book written by plaintiff to be published under defendant's name as the sole author thereof.

Defendant contends, and the court is in accord therewith, that the alleged agreement upon which plaintiff's cause of action is predicated offends public policy and is unenforcible, in that it has for its purpose and object the practicing of a fraud and deception upon the public.

It is established by abundant authority that agreements which tend to or have for their purpose to defraud the public generally, even though they may not amount to a criminal conspiracy, are illegal and void. They are denounced as contravening public policy, a declaration of principle that no one can lawfully do that which has a tendency to be injurious to the public or against the public good (*Veazey* v. *Allen,* 173 N. Y. 359, 368). Public policy is the interest of others than the parties directly concerned in the contract.

By the allegations of the complaint there is, in my opinion, apodictically shown, a scheme concocted and devised by the parties to deliberately foist a fraud on the public in the manner described; in effect and ultimate result to extract from the public the cost of the book by means of deception practiced upon it.

To urge that such a scheme and such an agreement be upheld as valid and enforcible is to ignore multitudinous rulings to the converse (see 13 C. J., Contracts, § 345, p. 414, " Agreements to Defraud the Public Generally ", and numerous cases there cited. See, also, *Sheridan* v. *Weber,* 252 App. Div. 398, 402–403).

Relative to the instant situation, it is appropriate to quote from the opinion in *Skinner* v. *Oakes* (10 Mo. App. 45, 57) : " Thus, if an author were to assign to another the privilege of publishing books with his name upon their title-page, * * * it cannot for a moment be supposed that any court would protect such a supposed right, even as against the original assignor. This point is absolutely clear, both upon principle and authority. " The principle is applicable here.

It is not an instance of writing under a nom de plume. In such a case, regardless of the pen name employed by the writer, he is, in truth, the real author and is not exploiting the ability, talent and authorship of another, palming it off under the false pretense that it is his own. In the former instance, it is, however, the *true* and *real* author, but merely employing a pseudonym, which is permissible in the field of literature and recognized in law (*Clemens* v. *Belford, Clark & Co.*, 14 F. 728, 729).

It is evident from the foregoing that the agreement in concern is void as against public policy.

What has been said (*supra*) expresses the policy of the law as it is conceived and enforced by and under decisional law. The same denouncement manifests itself in terms of positive law (see Penal Law, §§ 421, 964), castigating fraudulent and deceptive practices upon the public.

But, assuming, *arguendo,* only the parties hereto were affected by the agreement under consideration, as pleaded in the complaint, it would, nonetheless, still be denied recognition by the courts, both at law and in equity.

No action can arise out of an immoral or unlawful consideration, and it is also a well-established rule of law that where a contract has its genesis in fraud, deceit or violation of law, or violates accepted standards of right conduct, the contract is unenforcible and void (*Finkelman* v. *Stuyvesant Town Corp.*, 85 N. Y. S. 2d 593). In other words, where the cause of action arises *ex turpi causa,* the courts deny relief.

In the situation disclosed by the complaint, the court is of opinion that the agreement pleaded and relied on by plaintiff is void and unenforcible as against public policy.

There is a further reason why the complaint should be dismissed, and it is that it is legally insufficient in that it does not state facts sufficient to constitute a cause of action.

Paragraph " Seventh " of the complaint alleges that the contract which the parties entered into is that set forth as Exhibit " A ", annexed to the complaint and made a part thereof.

Paragraph " Eighth " alleges that "pursuant to the terms of the aforesaid agreement ", plaintiff agreed to *allow* said book to be published under the defendant's name as the sole author thereof, but there is no allegation, it is to be observed, that defendant agreed to *publish* plaintiff's book under his name as the sole author thereof. The *written* agreement, Exhibit " A ", annexed to the complaint, imposes no obligation upon the defendant with respect to the publication of the book.

Where a writing is annexed to a pleading and made part thereof, the writing prevails over the allegations and conclusions of the pleader; where there is a variance between the allegations and the writing, the instrument prevails (*Kobert* v. *National Mach. Co.*, 233 App. Div. 234, affd. 258 N. Y. 586; *New Amsterdam Cas. Co.* v. *Mobinco Brokerage Co.*, 219 App. Div. 486; *Kucker* v. *Gates Container Corp.*, 263 App. Div. 1006).

There being nothing in the writing, Exhibit " A ", that defendant agreed to publish plaintiff's book under his name as the sole author thereof, and the allegations of the complaint being to the converse, and at variance with the writing, the writing controls and thereunder no maintainable cause of action is set forth so far as the instrument is concerned.

The motion is granted and the complaint is dismissed. Settle order.