CHAIM BEN-DASHAN et al., Appellants, v GEORGE PLITT, Respondent.

Fourth Department, July 12, 1977

*Sayles, Evans, Brayton, Palmer & Tifft (Frank S. Swain* of counsel), for appellants.

*Louis C. Zannieri* for respondent.

MOULE, J. The appeal in this accounting action questions the propriety of both a judgment and order setting forth the rights and obligations of the parties following a court-ordered dissolution of their partnership and a subsequent liquidation of the partnership assets.

On May 15, 1971 plaintiffs and defendant entered into a written partnership agreement, the purpose of the partnership being the breeding and management of cattle and standard-bred horses. The operation of the partnership was conducted on a farm owned by defendant, known as Happiness Hills. Plaintiffs and defendant each made an initial capital contribution in the form of cattle and horses.

Under their agreement, defendant undertook the responsibility for the maintenance, feeding and caring of the animals. Remuneration for the cost of such care and management was to be paid to Happiness Hills Farm by the partnership according to the rates set forth in the written partnership agreement. However, during February, 1972 difficulties arose when defendant notified plaintiffs by letter that the cost of feeding and caring for the animals was increasing and that it would be necessary for Happiness Hills Farm to institute increases in the rates set forth in the original agreement. In a letter responding to defendant's notification, plaintiff Chaim Ben-Dashan did not question defendant's assertion that an increased rate of remuneration was necessary, but rather acknowledged the fact of high costs and suggested as a solution that the cattle be marketed to minimize losses.

Commencing in February, 1972 defendant charged the part-

nership at the increased rates set forth in his letter. During April and May, 1972 cattle were sold in an effort to help minimize losses that the partnership was incurring. However, by September 15, 1972 the partnership was in debt to Happiness Hills Farm in the amount of $4,263.50. Thereafter, in November, 1972 plaintiff Chaim Ben-Dashan and defendant met with the partnership's bookkeeper to review the partnership's financial situation. The men discussed dissolution of the partnership and agreed to attempt to dispose immediately of the remaining cattle. By the end of January, 1973 all the cattle had either been sold or removed from the farm by plaintiffs pending sale, leaving only the horses remaining on Happiness Hills Farm.

During the period of November, 1972 to March, 1973 plaintiffs and defendant wrote several letters to each other expressing a desire to terminate the partnership. In March, 1973 the partners met to discuss dissolution. While the partnership agreement provided for a method of valuing the assets in such a situation, it did not provide for a liquidation procedure. At the meeting, plaintiffs offered to purchase the remaining cattle and horses for $5,200 but no action was taken upon the offer.

Nothing further was done to liquidate the partnership assets until October, 1973. At that time plaintiffs brought an action for dissolution of the partnership, seeking appointment of a receiver and sale of the remaining assets. Pursuant to an order of the court on October 29, 1973, the partnership was dissolved and a referee was appointed to supervise the sale of the remaining assets, 16 standardbred horses. During the period of March, 1973 through May 15, 1974 defendant continued to bill the partnership for his services in caring for the horses, these expenses totaling approximately $15,000.

On May 18, 1974 the horses were sold at a public auction by and under the supervision of the court-appointed referee for a total of $2,525. Defendant purchased all but one of them at a price of $2,500; the remaining horse was sold for $25. Pursuant to court order, defendant paid only $1,250 to the referee for the horses he purchased, retaining the remaining $1,250. The expenses for the sale totaling $799.26 were then deducted from the remaining $1,275 received by the referee, leaving a sum of $475.74 which was deposited in a bank account and listed as a partnership asset in the bookkeeper's final accounting.

In its decision the trial court adopted this final accounting of the partnership operation, which stated that the partnership owed Happiness Hills Farm a total of $20,280.77. After accounting for the differential in the capital contributions of both parties and further reducing this total obligation by $482.28, representing the $475.74 remaining from the sale of the horses at auction and the balance left in the partnership checking account, it determined that plaintiffs' share of the partnership debt to defendant, as owner of Happiness Hills, was $9,874.38. The remaining partnership assets were awarded to defendant. It is from the judgment and order incorporating these findings that plaintiffs bring this appeal.

First, plaintiffs contend that defendant's action in increasing the rates to be charged the partnership for care and feeding of the animals was contrary to their original written agreement and that they are not liable for these increases.

While the terms of a partnership agreement are controlling in fixing the rights and obligations of the partners (Partnership Law, § 40), a partnership agreement may be modified by subsequent agreement (Martin v Peyton, 246 NY 213). Here, on February 29, 1972 defendant wrote plaintiffs informing them that due to high costs, certain increases in the rates to be charged for cattle care and an additional labor charge were necessary. Plaintiff Chaim Ben-Dashan responded in a letter dated March 3, 1972 in which he wrote: "The only way out I see is to divest ourselves of the cattle as soon as the market for them is opportune. Any losses which you have incurred would come 'off the top' before we share the receipts. We would continue the arrangement with the horses until we see which way this venture is taking us." It is clear that at that time plaintiffs did not object to defendant's institution of the rate increase, which took effect in February, 1972. Additionally, the record fails to indicate that any further correspondence was entered into between plaintiffs and defendant on this matter. In particular, at a meeting held in November, 1972 during which the parties met with the partnership's bookkeeper to review their financial situation, the matter of the increase was never raised by plaintiffs. Based upon these facts and the continued failure of plaintiffs to object to the increased rates during the months that followed, plaintiffs implicitly accepted the increase and may not now challenge it or avert their share of the partnership's obligation for payment of such expenses.

Plaintiffs next raise a question as to when dissolution of the partnership should be deemed to have occurred; in February, 1973 as they contend or at the time of the court-ordered dissolution on October 29, 1973.

It is well settled that a partnership may be dissolved by oral as well as written contract of the parties. In such a case the dissolution is deemed to take place when the partners determine to discontinue business (Bayer v Bayer, 215 App Div 454; see, 43 NY Jur, Partnership, § 184). Furthermore, although a partnership is generally considered to be dissolved from the date of the court decree ordering the dissolution, in a proper case the dissolution may be deemed to have occurred earlier than the decree date if the equities so warrant (Barclay v Barrie, 209 NY 40).

The record shows that during the period of November, 1972 to March, 1973 plaintiffs and defendant wrote several letters to each other expressing a desire to terminate the partnership. On February 17, 1973 defendant wrote plaintiffs a letter in which he indicated that they were behind in payments and that he wanted the partnership dissolved at once. Subsequently, on February 22, 1973 plaintiff Chaim Ben-Dashan responded by letter expressing a similar desire to dissolve the partnership. Finally, on March 9, 1973 defendant wrote plaintiffs confirming his earlier expressed desire to dissolve the partnership and suggesting that the parties set up a date for a meeting to discuss such a course of action, which meeting was subsequently held later that month. Based upon these facts, although it is true that the partnership was dissolved by court order on October 29, 1973, the partners' mutual agreement to discontinue the business took place on March 9, 1973 at the latest and, accordingly, the dissolution is deemed to have occurred at that time.

In March, 1973 the remaining assets of the partnership consisted of 16 horses. Based upon the final accounting of the partnership adopted by the trial court, the partnership was charged approximately $15,000 by Happiness Hills Farm for the continued care and feeding of these horses from that time until May 15, 1974. Plaintiffs argue that at the time of dissolution of the partnership in March, 1973 defendant assumed the role of liquidating partner and that it was his responsibility to dispose of the horses in a reasonable time and effect a final termination of the partnership. They further assert that defendant delayed almost 14 months in selling the

horses and winding up the business at an average expense to the partnership in excess of $1,000 a month. Therefore, plaintiffs contend that they should not be held liable for one half of the expenses incurred by defendant during that time, particularly in light of the fact that they offered to purchase the horses from defendant in March, 1973 for $5,200.

A partnership is not terminated upon dissolution, but rather continues until the winding up of the partnership affairs is completed (Partnership Law, § 61; *Bayer v Bayer,* 215 App Div 454, *supra).* Any partner ordinarily has the right to participate in the winding-up process and the duty imposed upon this liquidating partner is one of agency (43 NY Jur, Partnership, §§ 226, 227; *Gilmore v Ham,* 142 NY 1). Additionally, the only manner in which a partnership can be wound up is through an accounting, wherein its financial status may be evaluated *(Toeg v Margolies,* 280 App Div 319, 321, app dsmd 305 NY 568).

Here, the record shows that following the partners' mutual agreement to dissolve in March, 1973 neither party took the initiative to liquidate the assets or commence an accounting action. Additionally, plaintiffs' reference to defendant as the liquidating partner has no basis in the record. There was never any agreement reached with respect to who would take it upon himself to liquidate the remaining assets, i.e., sell the remaining horses, nor did the partnership agreement provide for a liquidation process. Although it is true that in a letter dated February 22, 1973 plaintiffs suggested that defendant arrange a sale of the horses at a reasonable price and that in March, 1973 plaintiffs offered to buy the remaining horses from defendant for $5,200, defendant was under no obligation to accept the former course of action nor was an agreement ever reached on the latter offer.

We have here a situation wherein both parties procrastinated in winding up the partnership until such time as plaintiffs initiated an action in October, 1973 for its dissolution and appointment of a referee to complete the liquidation. Therefore, responsibility for any delay in winding up the partnership must be shared by both parties, as well as any expenses generated by the delay, which in this case is the cost to the partnership of the caring for and feeding of the horses from March, 1973 until their sale.

Nevertheless, we do find that the calculations of the bookkeeper in his final accounting, as adopted by the trial court,

were improper in two respects. First, the costs of mixed feed and mineral and trimming expenses, constituting $977.14, should not have been separately charged to the partnership, but rather should have been included as part of the regular rates charged for the general care of the animals. Therefore, these expenses should have been deducted from the total obligation to Happiness Hills Farm of $20,280.77, leaving an amount owing of $19,303.63. Deducting from this amount the sum of $6.54 remaining in the partnership checking account and $49.72 representing plaintiffs' excess capital contributions, the total obligation is reduced to $19,247.37, with each party's share being $9,623.69.

Second, there was an improper application of the proceeds from the sale at auction of the 16 horses representing the partnership's remaining assets. Defendant purchased all but one of these horses at a price of $2,500. The remaining horse was sold for $25. However, defendant only paid $1,250 to the referee and retained the other half pursuant to court order. The expenses of the sale, $799.26, were deducted from the $1,275 sum that the referee received and the difference of $475.74 was listed as a partnership asset in the bookkeeper's calculations. However, before the division of the assets could be made, the expenses of the sale should have been deducted from the total amount of the proceeds. At present, none of the $799.26 in expenses was deducted from the share of the proceeds that went to defendant. Deducting the $799.26 in expenses from the total sale price of $2,525, $1,725.74 is left remaining, with each party entitled to $862.87.

Since plaintiffs never received their share of $862.87, $475.74 representing the partnership assets as a result of the sale and $387.13 which defendant retained over and above his rightful share, their obligation of $9,623.69 to Happiness Hills Farm as calculated above should be further reduced by this amount to $8,760.82. Subject to this adjustment, the amounts held by the receiver and in the partnership checking account totaling $482.28 were properly awarded to defendant.

Accordingly, the order and judgment of the trial court should be modified so that the total amount owing from plaintiffs to defendant is $8,760.82, and in all other respects should be affirmed.

MARSH, P. J., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Order and judgment unanimously modified in accordance with opinion by MOULE, J., and, as modified, affirmed, without costs.