OPINION OF THE COURT
Joseph F. Gagliardi, J.
This is an action brought by plaintiff to recover damages for breach of an oral contract allegedly made between plaintiff and defendant in 1973 and to impose a constructive trust upon real property. Defendant has not joined issue but has made this motion for judgment of dismissal pursuant to CPLR 3211.
The complaint alleges three causes of action. In the first cause of action plaintiff alleges, inter alia, that in and prior to 1972, plaintiff "had expertise and was engaged in the business of promotion and management of musicians involved in that phase of the music business known popularly as 'Rock and Roll’ or 'Rock’ and, during that period, besides doing so for compensation engaged in those activities without compensation for others”; that plaintiff met defendant in 1972 when defendant was a member of the musical group known as "Humble Pie” and when plaintiff was married to the group’s manager (a Mr. Brigden); that in 1973 defendant "requested that McCall leave her then husband and her then employment * * * and that she become associated with and work with Frampton in the promotion of Frampton as a musician representing to McCall that if she did so they would be equal partners in all proceeds from his employment in that held” (emphasis supplied); that in reliance upon these representations plaintiff left her husband and her employment and went to live with defendant, "thereafter devoting all her resources, time and effort to the promotion and success of Frampton in his endeavors”; that beginning in 1973, plaintiff, at defendant’s request, used all of her financial resources to support *162 herself and defendant, and engaged in performing various services for defendant "including, but not limited to, public relations and promotion work; aiding in costuming of Frampton and his associates; managing Frampton’s personal finances and traveling with Frampton during tours conducted by him”; that at various times, from 1973 to 1978, defendant acknowledged plaintiffs efforts both in public and in private and shared his receipts from his business with plaintiff, as well as bank accounts and other credit sources, and that both charged expenses incurred for the benefit of each to accounts maintained for that purpose "in accordance with their prior agreement”; in sum, that the parties were equal partners from 1973 through July, 1978.
In the second cause of action plaintiff alleges that in 1976 plaintiff, at defendant’s request, "shopped for arid selected a house and realty for the joint use of both” located in Crotonon-Hudson, County of Westchester, upon the representation by defendant that the house would be purchased and held for the benefit of both parties and that title thereto would be held jointly by plaintiff and defendant; that in December, 1976 defendant did purchase the house selected by plaintiff, but did so in his name alone, representing to plaintiff that this was done for business reasons; that "[i]n reliance upon Frampton’s representations and the trust and confidence McCall then had in him and as a result of the undue influence exercised by Frampton upon her, McCall permitted said property to be so acquired”; that, by reason of these allegations defendant "should be deemed to hold said house and real property in trust for McCall and for the mutual benefit of plaintiff and defendant.”
In the third cause of action plaintiff alleges that in 1973, defendant requested her to leave her husband and employment and to live with him "and that she would then thereafter share with him all his earnings and benefits”; that plaintiff relied upon these representations, did leave her husband and her employment, began to live with defendant "and used for the benefit of both all her resources and efforts, leaving her without funds or resources of her own”; that defendant accepted these benefits from plaintiff during periods when his earnings were "non-existent or nominal”; that defendant, until July, 1978, ratified and confirmed the agreement with plaintiff and shared with plaintiff all of their joint benefits and earnings and resources; that "[i]n or about July, 1978, *163 without McCall’s approval or consent Frampton unilaterally terminated this arrangement, taking for his sole benefit those benefits, resources and earnings and leaving McCall bereft of any.”
The complaint then prays the court to grant the following relief: On the first cause of action, an accounting of defendant’s earnings from 1973 to date and a judgment equally dividing those earnings between the parties; on the second cause of action, a judgment that the real property in Crotonon-Hudson is held by defendant for the equal benefit of both parties and directing that the record title of the property be changed to show joint ownership; and on the third cause of action, "a judgment directing that Frampton account to McCall for his earnings from 1973 to date and that Frampton pay to McCall one half thereof and a portion of his earnings from the date of such judgment thereafter in an amount to be fixed by the court” (emphasis supplied).
Defendant now makes this motion to dismiss all three causes of action on the ground that each "is insufficient as a matter of law and fails to state a valid cause of action against defendant” (CPLR 3211, subd [a], par 7) and on the ground that enforcement of the causes of action would violate the public policy of the State of New York, the Statute of Frauds, and would be "contrary to the doctrine of laches” (CPLR 3211, subd [a], par 5).
In support of this motion to dismiss, defendant by affidavit of counsel seeks to bring before the court certain factual background material concerning the relationship between the parties during the years when they lived together. (Defendant denies the existence of any business or partnership agreement, claims that plaintiff’s services were not needed to further his career, and insists that there was only a male-female relationship between them, from which plaintiff benefited economically.)
Plaintiff, in her opposing papers, objects to the submission of factual background data by defendant’s counsel on the ground that counsel does not possess personal knowledge of the relationship between the parties. She then proceeds in her own affidavit to present a counterversion of the events in question and asks that the court give notice if the motion is to be considered as one for summary judgment. (CPLR 3211, subd [c]) states, in part: "Whether or not issue has been joined, the court, after adequate notice to the parties, may treat the *164 motion as a motion for summary judgment”.) In such case, plaintiff asks leave to submit additional papers. In reply, defendant submits his own personal affidavit in which he incorporates by reference all of the factual material contained in his counsel’s affidavit.
This court will not consider this as a motion for summary judgment. The sole question presented is whether the complaint states a cause of action against defendant and whether it can withstand the challenge brought on the ground of the Statute of Frauds and on the ground of public policy. "As such, we accept, as we must, each and every allegation forwarded by the plaintiff without expressing any opinion as to the plaintiff’s ability ultimately to establish the truth of these averments before the trier of the facts.” (219 Broadway Corp. v Alexander’s Inc., 46 NY2d 506, 509.) If the complaint can withstand defendant’s challenge, then the resolution of contested factual issues must await trial. (It should be noted that defendant’s papers in support of this motion do not make any argument concerning the doctrine of laches, mentioned in the notice of motion, and laches will not be considered by the court.) The court, however, in examining the sufficiency of the complaint, does bear in mind that certain facts stand as uncontroverted.
In support of her argument that the complaint should not be dismissed, plaintiff relies principally upon the following cases: Marvin v Marvin (18 Cal 3d 660); Dosek v Dosek (Conn Sup Ct, Oct. 4, 1978, reported in 4 Family Law Reporter, Oct. 31, 1978, p 2828); McCullon v McCullon (96 Misc 2d 962); Hewitt v Hewitt (62 Ill App 3d 861); Carlson v Olson (256 NW2d 249 [Minn]). These cases are all distinguishable on their facts from the instant case, for there is no allegation herein, in the complaint or in the supporting papers, that plaintiff and defendant ever intended to marry each other, that they held themselves out to the public as husband and wife, or that the plaintiff and defendant were ever free to marry each other. There is no allegation that plaintiff ever changed her surname to that of defendant. (Apparently no children were born as a result of the sexual relationship between the parties.)
In Marvin v Marvin (supra), the California Supreme Court, applying and developing the law of that forum (a community property State), held that contracts between nonmarital partners should be enforced to the extent that the contract was *165 not explicitly founded on the consideration of unlawful sexual services, despite the arguments to the contrary based on public policy. That court also held that in the absence of express contract, the court should inquire into the conduct of the parties to determine whether that conduct demonstrated the existence of an implied contract, partnership or joint venture. It further held that the court may also employ the doctrine of quantum meruit or equitable remedies such as constructive or resulting trust. The plaintiff was held to have the right to try to establish her case at trial. It is clear, however, that plaintiff, Michelle Marvin, and defendant, Lee Marvin, did agree to hold themselves out as husband and wife and that she did assume his surname. It is also clear that during the time of their living together, Lee Marvin was divorced from his former wife and the relationship between the parties ceased to be adulterous so that they could then have contracted a valid marriage.
In Dosek v Dosek (supra), the court did grant relief to the plaintiff, who had lived with defendant in a nonmarital relationship. The court found that the parties had had a marriage-type relationship in all respects except for the ceremony. The plaintiff had changed her name to that of the defendant and a child had been born of their union. They held themselves out to the public as husband and wife and lived a life which manifested all of the hallmarks of a traditional and conventional family.
In McCullon v McCullon (96 Misc 2d 962, supra), the court granted relief to the plaintiff on two theories. The parties had lived together for 28 years and had held themselves out as husband and wife. She used his name, and they held joint accounts and filed joint tax returns. Title to realty was taken jointly as tenants by the entirety. She wore a wedding ring and three children were born of their union. On the motion for temporary alimony, support and counsel fees, the court held in favor of plaintiff on the ground that the parties had in fact contracted a valid common-law marriage in the State of Pennsylvania, where they had spent significant periods of time, and that this valid common-law union was to be recognized fully in New York. Upon considering the question whether relief could be granted in New York, absent the finding of the existence of a valid common-law union, the court noted, as did the Marvin court, the rapid shift in the role of women, the widespread incidence of nonmartial unions *166 and changing mores, and stated that these relationships should be recognized to the extent necessary to prevent injustice and to fulfill the expectations of the parties.
In Hewitt v Hewitt (62 Ill App 3d 861, supra), the court, following Marvin (supra), rejected the argument that public policy forbade the granting of relief to the plaintiff, who had lived in nonmarital union with the defendant, and held that relief could be granted upon the theories of express oral contract, implied contract, equitable relief upon misrepresentation, and constructive trust. The court found, however, that there had been a marriage, except for the license and ceremony. The parties lived together for 15 years, and defendant had misled plaintiff to believe that they had in fact established a valid common-law union. There was no question of adultery.
In Carlson v Olson (supra), the court allowed an equal partition of both real and personal property upon the separation of the parties, who had lived together in nonmarital union. There was no element of adultery; the parties just had not married. They had lived together for 21 years, holding themselves out to the public as husband and wife. A son was raised to majority. The court relied upon Marvin and held that principles of property law were not sufficient in rendering justice to the parties. Partition was found to be an appropriate vehicle and the court relied upon the theory of irrevocable gifts between the parties.
This court holds that the motion to dismiss all three causes of action of the complaint herein is granted. In the first place, the contract between plaintiff and defendant, as pleaded in the complaint, is void and unenforceable as a matter of public policy. Taking the allegations of the complaint as true for the purposes of this motion, it is patent that plaintiff pleads as the consideration for this agreement the commission of adultery on her part, viz., that she leave her husband and live with defendant and become associated with him. This contract was, therefore, in derogation of her existing marriage and involved, as an integral part thereof, conduct prohibited by section 255.17 of the Penal Law: "A person is guilty of adultery when he engages in sexual intercourse with another person at a time when he has a living spouse, or the other person has a living spouse. Adultery is a class B misdemeanor.” (The papers submitted on this motion leave no doubt that there was an illicit sexual relationship between the *167 parties. There is no indication that plaintiff has ever been divorced from her husband. Apparently, defendant was divorced from his wife during the time when the parties lived together.)
Pursuant to CPLR 3018 (subd [b]), "facts showing illegality * * * by statute or common law” is a recognized affirmative defense. Although the defense of illegality is not included among defenses listed in CPLR 3211 (subd [a], par 5), this defense, which is commonly called the defense of public policy, is a ground for dismissal pursuant to CPLR 3211 (subd [a], par 7), failure of the pleading to state a cause of action (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C3211:36, p 40; C3211:29, p 33; 4 Weinstein-KornMiller, NY Civ Prac, par 3211.25; Radnay v Schor, 41 Misc 2d 789).
 It is settled that agreements against public policy were unlawful and void (Sternaman v Metropolitan Life Ins. Co., 170 NY 13; Levin v Levin, 253 App Div 758; Courtney v Riordan, 192 Misc 53; Roddy-Eden v Berle, 202 Misc 261; Sturm v Truby, 245 App Div 357). This rule is not based on a desire to benefit the party who breaches an illegal contract, but on a desire to protect the common weal, the general welfare of society being damaged by the very making of such a contract. By refusing to enforce such a contract and leaving the parties without a legal remedy for breach, society is protected by discouraging the making of contracts contrary to the common good (see Attridge v Pembroke, 235 App Div 101; Radnay v Schor, 41 Misc 2d 789, supra). Even if the defense of illegality is not raised in the answer, a court may, nevertheless, refuse to enforce a contract, if it finds that the contract is violative of public policy (see Klein v Comenzo Co., 207 NYS2d 739).
To define public policy is often difficult, for it is a concept which is flexible. The Court of Appeals has recently addressed this point in an opinion by Judge Jasen (Matter of Sprinzen [Nomberg], 46 NY2d 623, 628): "Controversies involving questions of public policy can rarely, if ever, be resolved by the blind application of sedentary legal principles. The very nature of the concept of public policy itself militates against an attempt to define its ingredients in a manner which would allow one to become complacent in the thought that these precepts which society so steadfastly embraces today will continue to serve as the foundation upon which society will *168 function tomorrow. Public policy, like society, is continually evolving and those entrusted with its implementation must respond to its everchanging demands.”
With full awareness that courts must be conscious of the difficulties which may arise in applying the doctrine of public policy and must be careful to avoid rigidity and an overdependence on individual opinions as to the demands of the common good, there being no public policy save that which is in accord with the Constitution and laws of the State (see Messersmith v American Fid. Co., 232 NY 161; Straus & Co. v Canadian Paciñc Ry. Co., 254 NY 407; Reger v National Assn. of Bedding Mfrs. Group Ins. Trust Fund, 83 Misc 2d 527, 541), it is the opinion of this court that the contract, as alleged by plaintiff, is clearly subject to the defense of illegality. It is contrary to the public policy of this State, which recognizes the state of marriage and the protection thereof as essential to the welfare of our society. It requires, in its performance, the commission of adultery, which remains a crime in this State (see Penal Law, § 255.17). This contract as alleged, is clearly opposed to sound morality and is based on the illicit association of the parties. Thus it is void and unenforceable (see Veazey v Allen, 173 NY 359; Locke v Pembroke, 280 NY 430; Rhodes v Stone, 63 Hun 624, opn in 17 NYS 561; Vincent v Moriarty, 31 App Div 484; Matter of Carol E. B., 81 Misc 2d 284).
As has already been discussed herein, the cases upon which plaintiff relies in opposition to dismissal are distinguishable on their facts. As to the doctrine of public policy, this court is not bound in the consideration of this case by the opinions of courts of other jurisdictions, and, insofar as the views of the courts in Marvin, Dosek, McCullon, Carlson, and Hewitt (supra) differ herefrom, this court rejects them.
Although all three causes of action are to be dismissed on the ground of public policy, it is clear that the second cause of action is defective on the further ground that it fails to set forth the elements necessary to establish a constructive trust. Pláintiff seeks to obtain a one-half interest in real property located in Croton-on-Hudson. Legal title is in the name of defendant alone. There is no allegation of any writing that would satisfy the real property Statute of Frauds, section 5-703 of the General Obligations Law.
The elements necessary to establish a constructive trust are well settled: (1) a confidential relationship; (2) a promise *169 arising therefrom; (3) reliance on such a promise; (4) a breach of that promise; and (5) unjust enrichment therefrom (see Carreno v Carreno, NYLJ, Aug. 13, 1976, p 9, col 3, affd 56 AD2d 859; Fischer v Wirth, 38 AD2d 611; Marum v Marum, 21 Misc 2d 474). Other cases cite a transfer of property in reliance upon the promise as a necessary element for recovery (see Sharpe v Kosmalski, 40 NY2d 119; Janke v Janke, 47 AD2d 445, affd 39 NY2d 786; Foreman v Foreman, 251 NY 237). Where the aggrieved party did not have title to any interest in the real property, but did make a financial investment in the purchase or preservation of the property, courts have granted relief by means of imposing an equitable lien upon the realty (see Verity v Verity, 21 Misc 2d 385, affd 10 AD2d 729, affd 8 NY2d 1073; Colwell v Zolkosky, 29 AD2d 720). Once the elements of a constructive trust have been established, the court, in the exercise of its equitable powers, can direct a reconveyance of property to the person in whose favor the trust operates, provided that that person had previously had an ownership interest (see Sinclair v Purdy, 235 NY 245; Leary v Corvin, 181 NY 222). It is just this full relief which plaintiff seeks herein, asking the court to direct defendant to deed over to her a one-half interest in the real property in Croton-on-Hudson.
Considering the second cause of action as pleaded in the light most favorable to the plaintiff, it is nevertheless patent that no cause is pleaded for the establishment of a constructive trust, even by means of an equitable lien. Plaintiff alleges that she picked out the house at the request of defendant with the understanding that defendant would then purchase the house selected by plaintiff for their mutual use and enjoyment and that defendant agreed to take title jointly with plaintiff. Defendant did take title to the house selected, but did so in his own name alone. Although plaintiff alleges "undue influence” and that she "permitted” the property to be so acquired by defendant, this does not supply anything of substance. There is no allegation that plaintiff ever had any legal interest in the realty, that she ever conveyed any interest therein to defendant, that she contributed any moneys toward the purchase of the property. In short, there is no allegation of any unjust enrichment. At most, the pleading sets forth an unfulfilled expectation of plaintiff and nothing more. Even if plaintiff could allege that she and defendant were married to each other at the time when the alleged real estate transac *170 tion took place, there would still be no grounds pleaded for the imposition of a constructive trust (see Carreno v Carreno, supra; Fischer v Wirth, supra).
Finally, it is necessary to comment upon defendant’s contention that the alleged oral partnership contract is void and unenforceable pursuant to the Statute of Frauds, section 5-701 of the General Obligations Law (agreements required to be in writing) which states, in pertinent part:
"a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime”.
Although it is just such a contract of partnership which is pleaded, an indefinite partnership apparently intended to last until the death of one of the parties, and although there is no allegation in the complaint or supporting papers of any writing sufficient to satisfy the Statute of Frauds, it is clear that once partnership activity has commenced, the Statute of Frauds will not serve to defeat all recovery under the oral partnership. (See Sanger v French, 157 NY 213.) It is doubtful that the Statute of Frauds has any application to oral partnership agreements, certainly not when the contract has been wholly or partially executed. A partner can be called to account, although he cannot be compelled to continue the partnership. Partnership is treated as a partnership at will. (See, also, Krinsky v Winston, 32 AD2d 552; Wahl v Barnum, 116 NY 87; Traphagen v Burt, 67 NY 30; Green v Le Beau, 281 App Div 836; Zuckerman v Linden, 207 Misc 702; Pinner v Leder, 115 Misc 512, affd 200 App Div 894; Boxill v Boxill, 201 Misc 386; Crane and Bromberg, Law of Partnership, § 23, p 110.) Thus, plaintiffs seeking of an accounting for the years when allegedly the parties were living and working together pursuant to the oral partnership agreement cannot be defeated by an appeal to the Statute of Frauds. It is settled, however, that no action lies to compel one party to a partnership to continue to remain so. This is the relief which plaintiff in effect seeks in her third cause of action, wherein she asks the court to direct defendant to continue to pay her in the future (and indefinitely) a portion of his earnings. Viewing the third cause of action as based on the alleged oral partnership, *171 it is clear that plaintiff has failed to state a cause of action, without the necessity to rely upon the Statute of Frauds, for no one can be forced to remain a partner against his will (see Partnership Law, § 62; De Martino v Pensavalle, 56 AD2d 589; Netburn v Fischman; 81 Misc 2d 117; Bayer v Bayer, 215 App Div 454; Ben-Dashan v Plitt, 58 AD2d 244, 248; 43 NY Jur, Partnership, § 184).
For the reasons stated above, the motion to dismiss the complaint is granted as to all three causes of action. Plaintiff’s request for leave to replead is denied.