Todd A. FISCHER, Appellant,

v.

Jacquelyn FISCHER, Individually
and as Executrix of the Estate of
Richard A. Fischer, Appellee.

No. 2003–SC–000982–DG.

Supreme Court of Kentucky.

June 15, 2006.

Rehearing Denied Aug. 24, 2006.

Gerald F. Dusing, Stacy L. Graus, Adams, Stepner, Woltermann & Dusing, P.L.L.C., Covington, Counsel for Appellant.

H. Lawson Walker II, Monica L. Dias, Frost Brown Todd LLC, Cincinnati, OH, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant, Todd A. Fischer, seeks reversal of the Court of Appeals' opinion, wherein it reversed a Boone Circuit Court summary judgment in favor of Appellant, that enforced a buy-sell provision in a partnership agreement. Appellee, Jacquelyn Fischer, argues that we should affirm the opinion of the Court of Appeals overturning the trial court. For the reasons herein stated, we now reverse the decision of the Court of Appeals and reinstate the judgment of the Boone Circuit Court.

Appellant is the son of Richard Fischer, now deceased, and the stepson of Appellee. On November 1, 1994, Richard and Appellant formed the partnership D & T Enterprises, executing a written agreement to govern the partnership. The partnership agreement stated that its purpose was "the purchasing, leasing, and selling of real estate at 8415 U.S. 42, Florence, Kentucky." One of the partnership lessees was DAL,[1] a closely held corporation owned wholly by Richard. Although Appellant had no ownership interest in DAL, he was involved in its management and operation as a corporate officer.

Article XI of the 1994 agreement included a provision whereby, at the end of each year, a partner could retire from the partnership, giving the other partner an option to purchase the retiring partner's interest or terminate and liquidate the partnership business. Article XII of the 1994 agreement also included a buy-sell clause stating that:

> Upon the death of any Partner, the surviving Partners[2] may either purchase the decedent's interest in the Partnership or may terminate and liquidate the Partnership business. If the election is to purchase the decedent's interest, the surviving Partners shall serve notice in writing of the election, within three months after the death of the decedent. The notice to be served

---

1. DAL stands for Dental Arts Laboratory which was a tenant at the location in question, and was jointly operated by Appellant and Richard Fischer.

2. Although this clause refers to surviving "partners", this appears to be an error, as there were only two partners at the outset.

upon the executor or administrator of the decedent, or upon the known legal heirs of the decedent if no legal representative has been appointed at that time.

If the surviving Partners do not elect to purchase the interest of the decedent in the Partnership, they shall proceed with reasonable promptness to liquidate the business of the partnership. The decedent's estate shall not be liable for losses in excess of the decedent's interest in the Partnership at the time of his death. No compensation shall be paid to the surviving partners for their services and liquidation. The proceeds of the liquidation shall be distributed as realized, 50% to Richard Fischer and 50% to Todd A. Fischer.

On April 18, 1995, the property at 8415 U.S. 42, Florence, Kentucky, was conveyed to the partnership D & T Enterprises. On June 19, 1995, Appellant and Richard entered into an amended partnership agreement, modifying the previous buy-sell provision. In the amended agreement, the buy-sell provision stated that:

Upon the death of any Partner, the surviving Partners shall purchase the decedent's interest in the Partnership. The notice to be served upon the executor or administrator of the decedent, or upon the known legal heirs of the decedent if no legal representative has been appointed at that time. Said purchase price shall be $50,000.00 payable over five years with interest at the prime rate to a cap of 10%.

Both the original agreement and the amended agreement required changes of any of the terms or provisions of the agreement to be in writing and signed by each of the parties.

Several years after the partnership was formed, Richard learned that he was terminally ill. Thereafter, he communicated with Appellant, by counsel, on July 27, 2000, stating in relevant part as follows:

As Mr. Richard Fischer's attorney, I am putting you on notice that effective immediately Mr. Fischer is exercising his right pursuant to K.R.S. 362.300(1)(b) to dissolve the partnership since no definite term or particular undertaking has been specified.

The reason for this dissolution is that the buy-sell provision is grossly unfair to Mr. Richard Fischer. Article IX provides for a buy-out in the event of the death of Mr. Richard Fischer of his interest in the partnership property for $50,000.00. The current mortgage on the property is approximately $200,000.00 and the property is valued in excess of $600,000.00. The result of such a buy-out would be a loss to Mr. Richard Fischer's estate of approximately $150,000.00

Mr. Richard Fisher will certainly consider reforming a new partnership with his son upon more equitable terms.

For the time being, the parties will own the property as joint tenants and should continue filing tax returns as though a partnership exist [sic]. From this point, no formal partnership agreement exists due to the dissolution. Please let me know how your client wishes to proceed.

Thereafter, Richard executed a new will on March 13, 2001,[3] leaving his entire estate to his second wife, Appellee, Jacquelyn Fischer. Appellee was also named as executrix. Richard named Chad Fischer, his minor son with Appellee, as the first contingent beneficiary. But in the event

3. Appellant filed a counterclaim in the trial court alleging the will was signed under duress and undue influence.

that both Appellee and Chad predeceased Richard, four of five of Richard's children from his first marriage were named secondary contingent beneficiaries. Appellant was left out.

Richard died on June 28, 2001. The property which D & T Enterprises purchased was titled in the name of D & T Enterprises and it so remains. Tax returns were filed for D & T Enterprises in 2000 and 2001 as a partnership, per Richard's request. Appellant contends that Richard did not wind up the partnership, but that both parties merely entered into negotiations to reach an agreement to work out their differences. Appellee contends that the wind up was initiated by the letter of dissolution from Richard's attorney to Appellant, and the winding up of the partnership's business was ongoing but not completed before Richard's death.

Appellee, individually and as executrix of Richard's estate, filed suit in the Boone Circuit Court. After a period of discovery, Appellant, the defendant at trial, moved for partial summary judgment seeking enforcement of the buy-sell provision of the partnership agreement. Appellant argued that despite Richard's letter, "no affirmative act was carried out by the Partners to wind up the affairs of the Partnership." There being no wind up, Appellant argues that the partnership continued in fact, and accordingly, the partnership agreement remained in effect governing the partnership. The trial court granted partial summary judgment, holding that the buy-sell agreement was enforceable. Appellant was ordered to pay to Richard's estate the

sum of $50,000.00 for Richard's interest in the partnership, and to dissolve, wind-up, and terminate D & T Enterprises. Appellee was ordered to convey to Appellant, by general warranty deed, title to the property at 8415 U.S. 42, Florence, Kentucky.

The Court of Appeals reversed, holding that the letter of July 27, 2000, from Richard's attorney to Appellant's attorney dissolved the partnership; that the buy-sell provision was extinguished and became unenforceable on that date; and that nothing in the Kentucky Uniform Partnership Act required Richard and Appellant to complete the winding up of partnership affairs before Richard's death. We granted review, and oral argument was heard.

■■■ For clarity, a brief explanation of partnership dissolution is necessary. "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."[4] "Dissolution is merely the commencement of the winding up process. The partnership continues for the limited purpose of winding up the business."[5] "[D]issolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up; winding up, the process of settling partnership affairs after dissolution."[6] The right to dissolve is inseparably incident to every partnership, and there can be no indissoluble partnership.[7]

---

4. Uniform Partnership Act § 29 (1914).

5. 59 Am.Jur.2d § 550; (citing Official Comment to Uniform Partnership Act § 801 (1997)).

6. Official Comment to Uniform Partnership Act § 29 (1914).

7. *Atha v. Atha,* 303 Mich. 611, 6 N.W.2d 897 (1942); *see also McCall v. Frampton,* 99 Misc.2d 159, 415 N.Y.S.2d 752 (N.Y.Sup. 1979); *Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543 (Tex.App.Dallas 1991).

■ Appellant first argues that the Court of Appeals erred by failing to determine whether D & T Enterprises was a partnership for a particular undertaking pursuant to KRS 362.300. He contends that if the partnership was for a particular undertaking, then Richard would have been in contravention of the partnership agreement by attempting to dissolve the partnership, and subject to contractual liability. "[I]n the absence of some contrary showing a partnership is deemed to be at will and any partner may withdraw at any time without incurring liability, such a withdrawal is wrongful if it is in violation of an express or implied agreement that the relationship would continue for a definite term or until a particular undertaking is completed." [8]

Adopted verbatim from § 31 of the Uniform Partnership Act (UPA) of 1914, KRS 362.300 deals with causes of dissolution, and the relevant portions of the statute for this case are reprinted below:

Dissolution is caused:

(1) Without violation of the agreement between the partners:

. . .

(b) By the express will of any partner when no definite term or particular undertaking is specified,

. . .

(4) By the death of any partner[.] [9]

It is undisputed that the partnership was not for a definite term, as no time length was included in the amended partnership agreement. However, whether the partnership was for a particular under-

taking has been in much dispute. If the partnership was for a particular undertaking, one capable of accomplishment at some time,[10] then Richard would have been unable to rightly dissolve the partnership via the letter from his counsel under the authority of KRS 362.300(1)(b). If, however, the partnership was not for a particular undertaking, then the letter would have been effective to dissolve the partnership without violating the agreement, and this Court would have to decide whether the dissolution eliminated the partnership agreement.

■ It does not appear from the record that this issue was raised before the Court of Appeals, however we note that it was the primary argument advanced in the motion for discretionary review in this Court. Furthermore, both sides argued the issue extensively at the oral argument before this Court. Appellee contends that this issue was not decided by the trial court, and therefore is improper for our review. "[A] question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court." [11] A review of the record does disclose that this issue was brought to the attention of the trial court, and argued in Appellee's response to Appellant's summary judgment motion. An appellate court "is without authority to review issues not raised in or decided by the trial court." [12] However, this issue was raised by Appellee in the trial court, and that court ultimately adjudicated the summary judgment with full knowledge of the argu-

**8.** *68th Street Apts., Inc. v. Lauricella,* 142 N.J.Super. 546, 362 A.2d 78, 86–87 (1976).

**9.** KRS 362.300(1)(b), (4).

**10.** *Girard Bank v. Haley,* 460 Pa. 237, 332 A.2d 443, 447 (1975).

**11.** *Combs v. Knott County Fiscal Court,* 283 Ky. 456, 459, 141 S.W.2d 859, 860 (Ky.1940) (citing *Benefit Ass'n of Railway Employees v. Secrest,* 239 Ky. 400, 39 S.W.2d 682 (1931)).

**12.** *Regional Jail Authority v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989) (citing *Matthews v. Ward,* 350 S.W.2d 500 (Ky.1961)).

ment, but without disclosure of its decisional basis. If the summary judgment is sustainable on any basis, it must be affirmed. Appellee's failure to raise the issue in the Court of Appeals does not prevent Appellant from presenting it here as he had no duty to present it to the Court of Appeals since he defended the trial court decision and it had to be affirmed if it was sustainable on any basis.[13]

The trial court must be presumed to have examined the issue, as it is pivotal in determining the ultimate question of whether the partnership agreement governed, or if the statutory scheme regarding dissolution should have controlled. Furthermore, the question of whether the partnership was for a particular undertaking is a prerequisite to deciding whether we even reach other issues regarding the winding up period of the partnership. Ultimately, the controlling issue in this case is whether the letter from Richard's attorney effectively dissolved the partnership. To determine this we must decide whether this partnership was for a particular undertaking, and the language used will be our guide.

■ Appellee asserts that the partnership agreement was not for a definite term or for a particular undertaking, and the partnership could be properly dissolved at the express will of either Richard or Appellant. However, the language suggests otherwise. The amended partnership agreement's stated purpose was for the "purchasing, leasing, and selling of real estate at 8415 U.S. 42, Florence, KY." Both sides have cited the case of *Girard Bank v. Haley*[14] favorably, and both contend that the case buttresses their argument. *Girard Bank* is not a Kentucky

case, but it has been relied on in many other states, and its holding is instructive to the case at bar.

In *Girard Bank,* Mrs. Reid and three other partners entered into a written partnership agreement for the purpose of leasing real property in Pennsylvania. Mrs. Reid was designated as the manager of the property, and the three other parties were to perform manual labor on the parcel. In a letter addressed to the other partners, Mrs. Reid advised them that she was dissolving the partnership and requested that the partnership assets be liquidated. Meetings between all the partners failed to develop a plan of liquidation, and suit was initiated by Mrs. Reid, naming the other partners as defendants. Mrs. Reid died before finality of the controversy, and the question became whether her letter, or her death, dissolved the partnership.

■ As Pennsylvania had enacted the Uniform Partnership Act, the Supreme Court of Pennsylvania decided that the case turned on the applicability of § 31 of the UPA. The partnership agreement in *Girard Bank* is very similar to the case at bar, in that both partnerships existed for the buying and leasing of property, with the Fischer partnership adding the word "selling" to its partnership purpose. The Pennsylvania court concluded pursuant to § 31, that dissolution of the partnership is caused "by the express will of any partner",[15] and "the expression of that will need not be supported by any justification."[16] Furthermore, that court went on to explain:

> If no "definite term or particular undertaking (is) specified in the partnership agreement", such an at-will dissolution

**13.** *See Com. Transp. Cabinet Dept. of Highways v. Taub,* 766 S.W.2d 49 (Ky.1988).

**14.** 460 Pa. 237, 332 A.2d 443 (1975).

**15.** KRS 362.300(1)(b), (2); UPA § 31 (1914).

**16.** *Girard Bank,* 332 A.2d at 446.

does not violate the agreement between the partners; indeed, an expression of a will to dissolve is effective as a dissolution even if in contravention of the agreement [17]. . . . If dissolution results in a breach of contract, the aggrieved partners may recover damages for the breach and, if they meet certain conditions, may continue the firm business for the duration of the agreed term or until the particular undertaking is completed.[18]

The Pennsylvania Court went on to hold that the letter by Mrs. Reid was an unequivocal dissolution of the partnership, and was not in contravention of the partnership agreement. In doing so, the court noted that there was no provision fixing a definite term, and the undertaking to which the agreement referred was for the maintaining and leasing of real property. The court stated its rationale regarding the particular undertaking as follows: "Leasing property, like many other trades or businesses, involves entering into a business relationship which may continue indefinitely; there is nothing 'particular' about it." [19] We accept the view of the Pennsylvania Court that the undertaking in *Girard Bank* was one of a general purpose, and could not be considered a "particular undertaking" under the UPA. "A 'particular undertaking' under the statute must be capable of accomplishment at some time, although the exact time may be unknown and unascertainable at the date of the agreement." [20]

Appellee cites the case of *Chandler Med. Bldg. Partners v. Chandler Dental Group* [21] for the proposition that a partnership agreement that includes among its purposes the selling of particular real estate is not a partnership for a particular undertaking. However, the partnership agreement at issue in *Chandler* stated that its purpose was developing, constructing, operating, leasing, *or* selling a two-story medical office building in Chandler, Arizona. The conjunction "or", as it is used in *Chandler*, operates very differently than the conjunction "and", as it is used in the case at bar. The usage of "or" allows the partnership flexibility to pick and choose which purpose it operates under, and thereby removes any particularity it might otherwise have. In contrast, the use of "and" does not allow the partnership the flexibility to choose which purpose it wishes to pursue, rather, the partnership must pursue all of the purposes listed in the partnership agreement. Simply stated, "or" is flexible, while "and" is rigid.

Perhaps even more instructive, the Arizona Court of Appeals stated as follows:

In contrast, a partnership formed for the purpose of developing and selling real property is one for a particular undertaking and is not terminable at will. As stated in *Lauricella* : It is true that where a partnership is not limited as to time, and there is nothing to show the intention of the parties as to its duration, it will be held to be a partner-

---

**17.** The comment to § 31 states the rationale for this rule as follows: "The relation of partners is one of agency. The agency is such a personal one that equity cannot enforce it even where the agreement provides that the partnership shall continue for a definite time. The power of any partner to terminate the relation, even though in doing so he breaks a contract, should, it is submitted be recognized. The rights of the parties upon a disso-

lution in contravention of the agreement are safeguarded by section 38(2)."

**18.** *Girard Bank*, 332 A.2d at 446–47 (internal citations omitted).

**19.** *Id.* at 447.

**20.** *Id.*

**21.** 175 Ariz. 273, 855 P.2d 787 (1993).

ship at will. But where a partnership has for its object the completion of a specified piece of work, or the effecting of a specified result, it will be presumed that the parties intended the relation to continue until the object has been accomplished. There is, then, a term fixed by the copartnership agreement, and until that time arrives one partner cannot terminate the partnership and continue the enterprise for his own benefit. In keeping with this analysis, a number of cases have found agreements to develop real estate to be partnership or joint venture obligations which are to continue until the undertaking is accomplished.

Here, section 3 of the partnership agreement provides that the purpose and business of this partnership shall be to "sponsor, for a profit, the promotion, development, and construction of a two-story medical office building ... to own, hold for investment, improve, *lease, manage, operate or sell* such building." According to the record, at the time the complaint was filed, the building had been constructed and was being leased, managed, or operated, but had not been sold. CMBP claims that the particular undertaking was the sale of the building, which had not been accomplished. We reject the argumentbecause the agreement does not require that the building ever be sold; conceivably, it can be leased for an indefinite period of time. Under these circumstances, and given the fact that section 20 provides for voluntary dissolution at any time upon agreement of 60% in interest of the partners, we believe that CMBP has not established this was a partnership for a particular undertaking.[22]

If the partnership agreement between Appellant and Richard was for the sole purpose of "buying and leasing property", our conclusion would follow *Girard Bank*, and we would conclude that the letter from counsel giving notice of dissolution was not in contravention of the partnership agreement. However for our purposes, the most instructive language in *Girard Bank* is not contained in the main body of the decision, but is in footnote 9. Referring to the buying and leasing provision of the partnership agreement, the Pennsylvania Court stated in the footnote that "[i]n contrast, a partnership formed for the purpose of developing and selling a particular tract of land would be one for a particular undertaking, and hence not rightfully terminable at will until the purpose was accomplished."[23]

At first glance, the language of the partnership agreement in the case at bar appears to designate the lot located at 8415 U.S. 42, Florence, KY, as one used for a real estate business office. This is because of the use of the word "at" in the phrase "purchasing, leasing, and selling of real estate at 8415 U.S. 42, Florence, KY." However, neither side has contended that this was the intended use of the parcel, rather, both sides have conceded that the land was to be bought, leased variously, and eventually sold. This supports the view that the partnership was for a particular undertaking, because it could be accomplished at some point in the future. The absence of an exact date for accomplishment of the ultimate undertaking does not change this feature of the agreement. Additionally, the inclusion of a specific address in the partnership agreement, as

---

**22.** *Id.* at 793–94 (citations omitted) (emphasis in original).

**23.** *Id.*, n. 9 (Although this language is dictum, it is not cited as controlling authority, rather, we adopt its reasoning to the facts of the case at bar).

opposed to just a general statement of the partnership's purpose, adds to the weight of finding that this partnership was for a particular undertaking. Because the partnership agreement itself uses specificity to designate one unique parcel of land that will be bought, leased, and sold, there is no question as to when the partnership will terminate; i.e., when the land at 8415 U.S. 42, in Florence, Kentucky, is sold.

■ Whether a partnership is for a particular undertaking has generally been regarded as a question of fact.[24] However, as the facts regarding the purpose of the partnership appear in this agreement, there is no dispute as to the facts. "A determination of an issue of law is also presented where the question is one ... where the relevant facts are undisputed and the dispositive issue thereby becomes the legal effect of those facts."[25] This case turns on the legal effect of the facts regarding the purpose of the partnership. We hold that in this case, no trier of fact need address whether the partnership was for a particular undertaking, and that the question was properly decided by the trial court as a matter of law.

■ Richard's attempted dissolution prejudiced valuable contract rights belonging to Appellant. Whether dissolution was conditional or unconditional defined Appellant's rights and remedies. The letter from Richard's counsel relied on incorrect statutory authority, and in the context of our analysis, was no more than an attempt to circumvent what the partnership agreement expressly provided. Effective dissolution was conditional on KRS 362.300(1)(b) being applicable, but since that section is not a proper basis of disso-

lution under the facts of this case, the dissolution was ineffective. A dissolution must be unequivocal,[26] and this one was not. The partnership agreement was in operation, and Richard could not rightly dissolve it under KRS 362.300(1)(b). If the letter had been an unequivocal dissolution, Appellant could have sued under a breach of contract theory for Richard's wrongful dissolution. But as Richard tried to have it both ways and did not manifest an unequivocal intent to dissolve, there was no dissolution, and the agreement must be enforced. Dissolution occurred only upon Richard's death and those provisions of the agreement are controlling.

For the foregoing reasons we reverse the Court of Appeals, and reinstate the judgment of the trial court.

GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., concur.

COOPER, J., files a separate concurring opinion.

ROACH, J., concurs in the majority opinion and in Justice COOPER'S concurring opinion as an alternative ground for resolving the matter.

COOPER, Concurring Justice.

I concur in the result reached in this case because the winding up of the partnership affairs was not completed prior to Richard Fischer's death. KRS 362.295. However, I do not regard the "purpose" statement in Article II of the amended partnership agreement, i.e., "the purchasing, leasing and selling of real estate at 8415 U.S. 42, Florence, Kentucky," to be dispositive of whether the partnership was

24. *68th Street Apts., Inc.,* 362 A.2d at 87.

25. *Western Kentucky Coca–Cola Bottling Co. Inc. v. Revenue Cabinet,* 80 S.W.3d 787, 790–91 (Ky.App.2001).

26. *See Girard Bank,* 332 A.2d at 447; *Alessi v. Brozzetti,* 228 A.D.2d 917, 644 N.Y.S.2d 422 (3d Dep't 1996).

one of definite term or particular undertaking. KRS 362.300(1)(b).

Article X of the original partnership agreement provided: "This Agreement shall be binding and in force and the terms of this Partnership shall be for the period of ten (10) years from the date hereof." The parties deleted this provision by strikethrough and initialed that deletion, indicating their intent not to limit the partnership to any definite term. The amended agreement did not contain a provision similar to original Article X or any other language limiting the term of the partnership. Thus, it is obvious the parties did not intend that the partnership be one of definite term. The only remaining issue is whether the partnership was a particular undertaking.

One can assume that a partnership would retain the right to sell, as well as purchase and lease, its real estate. While the majority opinion finds footnote 9 in *Girard Bank v. Haley,* 460 Pa. 237, 332 A.2d 443, 447 n. 9 (1975), to be dispositive, that footnote describes a hypothetical partnership "formed for the purpose of developing and selling a particular tract of land" as being one for a particular undertaking. *Girard Bank* obviously was referring to the type of real estate development enterprise in which the primary purpose is to subdivide a tract of land into and sell, *e.g.,* residential lots, so that when the last lot is sold, the particular undertaking for which the partnership was formed is concluded.

Here, the primary purpose of the enterprise was to generate income by purchasing and leasing the partnership property. "Leasing property, like many other trades or businesses, involves entering into a business relationship which may continue indefinitely; there is nothing 'particular' about it." *Id.* at 447. Thus, KRS

362.300(1)(b) applied, and Richard Fischer had the power to unilaterally dissolve the partnership. However, the only immediate effect of a dissolution is that the partner ceases to be associated in the carrying on of as distinguished from the winding up of the business. KRS 362.290. Dissolution does not terminate the partnership; rather, the partnership continues until the winding up of the partnership affairs is completed. KRS 362.295.

> [T]he term ["dissolution"] is employed as designating a change in the relation of the partners caused by any partner ceasing to be associated in the carrying on of the business. As thus used "dissolution" does not terminate the partnership, it merely ends the carrying on of the business in that partnership. The partnership continues until the winding up of partnership affairs is completed.

William Draper Lewis,[1] *The Uniform Partnership Act,* 24 Yale L.J. 617, 627 (1915). Here, the parties never even ceased carrying on the partnership business.

Since the winding up of D & T Enterprises was never completed, the partnership agreement and its buy-sell provision were still in effect at the time of Richard Fischer's death. *Cf. Blandau v. Rennick,* 147 Or.App. 203, 935 P.2d 457, 462–63 (1997) (because partners' dissolution agreement containing new buy-sell provision had not gone into effect prior to partner's death, buy-sell provision in original partnership agreement remained in force and effect).

Accordingly, I concur in the result reached by the majority opinion, though not in its reasoning.

---

1. Dean Lewis was one of the principal drafters of the Uniform Partnership Act.