RENDERED: FEBRUARY 12, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0626-MR

VERSAILLES FARM, HOME AND                                    APPELLANT
GARDEN, LLC


                  APPEAL FROM WOODFORD CIRCUIT COURT
v.                HONORABLE BRIAN K. PRIVETT, JUDGE
                  ACTION NO. 14-CI-00202


HARVEY HAYNES; AND JERRY                                       APPELLEES
RANKIN, d/b/a FARMERS TOBACCO
WAREHOUSE


                              OPINION
                              AFFIRMING

                          ** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER,
JUDGES.

KRAMER, JUDGE: Versailles Farm, Home and Garden, LLC ("VFHG") appeals

from an order of the Woodford Circuit Court granting summary judgment to Jerry

Rankin, d/b/a Farmers Tobacco Warehouse ("FTW").[1] We affirm the order

---

[1] The circuit court granted summary judgment in favor of VFHG and against defendant Harvey Haynes on July 13, 2016. Although Haynes was named in this appeal, that order is not before us.

granting summary judgment in favor of FTW but for different reasons than those of the circuit court.[2]

## Factual and Procedural Background

The record before us shows that FTW began advancing funds to Harvey Haynes as early as 2012. Numerous security agreements were executed between Haynes and FTW in which various crops and farm equipment were listed as collateral. On June 1, 2013, Haynes executed and delivered a promissory note to VFHG in the amount of $75,000.00. A collateral security agreement was also executed that granted VFHG a security interest in Haynes' 2013 tobacco crop, among other sources of collateral. On June 25, 2013, Haynes executed a security agreement that gave FTW a security interest in "100 acres of burley tobacco and any insurance proceeds from the crop" ("the June 25 security agreement"). Although the record before us does not contain the Uniform Commercial Code ("UCC") financing statement filed with the Secretary of State by FTW perfecting its security interest, VFHG does not dispute that FTW was the first to file its financing statement and had priority on the proceeds from the sale of Haynes' 2013 tobacco crop.[3,4]

---

[2] "If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

[3] VFHG filed its financing statement on August 29, 2013.

[4] *See* Kentucky Revised Statute (KRS) 355.9-322.

In November 2013, VFHG's attorney sent a letter to FTW advising of VFHG's perfected security interest in the 2013 crop and requesting that VFHG be included "as payee on any proceeds check(s) issued relative to a sale(s) of the above-referenced crops." VFHG never received payment for sale of the tobacco crop. On June 30, 2014, VFHG filed suit against Haynes in Woodford Circuit Court, claiming it was owed $59,329.25. The parties engaged in discovery, and Haynes produced receipts showing his 2013 tobacco crop had been sold for the sum total of $217,960.12. Haynes also disclosed that FTW received insurance proceeds for the same crop in the amount of $37,500.00. Additionally, Haynes produced demand notes and security agreements executed by Haynes to FTW dating back to 2012. The June 25 security agreement was among those documents.

Based on the documents produced by Haynes in discovery, VFHG was granted leave to file an amended complaint in the circuit court. The amended complaint named FTW as a defendant and alleged conversion of the proceeds of the sale of Haynes' 2013 tobacco crop by FTW. The parties filed competing motions for summary judgment. The circuit court denied VFHG's motion and granted that of FTW. This appeal followed. Further facts will be developed as necessary.

## Standard of Review

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). We must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, VFHG) and determine whether the circuit court correctly found there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). A party responding to a properly supported summary judgment motion cannot merely rest

on the allegations in his pleadings.  *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914, 916 (Ky. 1955).

**Analysis**

VFHG's arguments on appeal focus on the lack of a future advances clause in the June 25 security agreement between Haynes and FTW pursuant to KRS 355.9-204(3).  VFHG argues that the circuit erred (1) in its interpretation of KRS 355.9-204(3) that a security agreement does not have to include a future advances clause to secure future advances; (2) in its interpretation of the June 25 security agreement; and (3) by finding that a future advances clause was within the contemplation of Haynes and FTW.  For reasons stated below, we need not reach the merits of VFHG's arguments.

We agree with VFHG's assertion that the official comments to the UCC represent the legislative intent of Kentucky's General Assembly.  KRS 355.1-103(3) states:

> Official comments to the Uniform Commercial Code, as published from time to time by the National Conference of Commissioners on Uniform State Laws, represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control.

Accordingly, we turn to Official Comment 2 to UCC § 9-502 (*see*

KRS 355.9-502 for Kentucky's corresponding statute), which pertains to the filing

of financing statements and reads as follows:

> **"Notice Filing."** This section adopts the system of
> "notice filing." What is required to be filed is not, as
> under pre-UCC chattel mortgage and conditional sales
> acts, the security agreement itself, but only a simple
> record providing a limited amount of information
> (financing statement). The financing statement may be
> filed before the security interest attaches or thereafter.
> See subsection (d). See also Section 9-308(a)
> (contemplating situations in which a financing statement
> is filed before a security interest attaches).
>
> The notice itself indicates merely that a person may have
> a security interest in the collateral indicated. *Further*
> *inquiry from the parties concerned will be necessary to*
> *disclose the complete state of affairs. Section 9-210*[5]
> *provides a statutory procedure under which the secured*
> *party, at the debtor's request, may be required to make*
> *disclosure. However, in many cases, information may be*
> *forthcoming without the need to resort to the formalities*
> *of that section.*
>
> Notice filing has proved to be of great use in financing
> transactions involving inventory, accounts, and chattel
> paper, because it obviates the necessity of refiling on
> each of a series of transactions in a continuing
> arrangement under which the collateral changes from day
> to day. However, even in the case of filings that do not
> necessarily involve a series of transactions (e.g., a loan
> secured by a single item of equipment), a financing
> statement is effective to encompass transactions under a
> security agreement not in existence and not contemplated
> at the time the notice was filed, if the indication of

---

[5] *See* KRS 355.9-210 for Kentucky's equivalent statute.

-6-

collateral in the financing statement is sufficient to cover the collateral concerned. Similarly, a financing statement is effective to cover after-acquired property of the type indicated and to perfect with respect to future advances under security agreements, regardless of whether after-acquired property or future advances are mentioned in the financing statement and even if not in the contemplation of the parties at the time the financing statement was authorized to be filed.

(Emphasis added.)

As previously stated herein, VFHG does not dispute that FTW perfected its security agreement and was first to file its financing statement. The effect of FTW's financing statement was to put other creditors, including VFHG, on notice that it had a security interest in the collateral stated therein (*i.e.*, Haynes' 2013 tobacco crop). However, the record before us, including the letter sent by VFHG's attorney to FTW in November 2013, gives no indication that VFHG took any steps to make itself aware of FTW's prior-filed financing statement or the June 25 security agreement.[6] In short, the record before us indicates that VFHG did not investigate the state of the collateral prior to lending $75,000.00 to Haynes.

---

[6] Paragraph 9 of VFHG's initial complaint, filed June 30, 2014, states, "It is [VFHG's] belief that the 80 acres of tobacco on the Becker Farm in Versailles, KY and 16 acres of tobacco on the farm at Iron Works Pike, Georgetown, KY, as referenced in the Note and [Security] Agreement, have been sold; however, [VFHG] received no proceeds of said sale, nor does [VFHG] know where such tobacco was sold, or any other particulars regarding such sale." On page 2 of its brief to this Court, VFHG states, in relevant part, "[a]ware that Haynes sold portions of his tobacco at FTW, on or about November 18, 2013 VFHG notified FTW via certified mail, return receipt requested, that VFHG was a secured party as to Haynes' 2013 tobacco crop and that any proceeds of sale from the crop were subject to VFHG's properly perfected security interest[.]" At no point in the record or in its brief to this Court does VFHG give any indication that it was

VFHG argues that, because the June 25 security agreement does not contain a future advances clause, it covers only what was owed by Haynes to FTW prior to that date, but VFHG's argument misses the mark. Because VFHG did not investigate the state of the collateral based on FTW's financing statement, VFHG was wholly unaware how much Haynes was indebted to FTW or how much credit FTW intended to advance to Haynes as a result of the June 25 security agreement. KRS 355.9-210 would have allowed Haynes to request an accounting from FTW to present to VFHG, but the record before us does not indicate that such a request was made, either formally pursuant to the statute or informally.

Likewise, VFHG's legal arguments are wholly unpersuasive. In *ITT Industrial Credit Company v. Union Bank and Trust Company*, 615 S.W.2d 2 (Ky. App. 1981), this Court held that a perfected security interest evidenced by a security agreement without a future advances clause has no priority in relation to a subsequent creditor with a perfected interest in the same collateral, after the obligation of the first security agreement is fully paid and the original creditor makes a new loan secured by new and different collateral, while taking a new security agreement and naming the original items as additional collateral. VFHG

aware of FTW's prior-filed financing statement when it advanced funds to Haynes. Finally, page 3 of VFHG's brief to this Court discloses that VFHG did not see the June 25 security agreement until discovery commenced in this action.

argues that *ITT* stands for the proposition that a security agreement must contain a future advances clause. This Court

> conclude[d] that it is better practice, and more equitable in this situation, to require the original creditor to provide in his agreement for future advances, if there is an agreement between the debtor and the creditor for such advances. In our opinion, the statute [requires] this statement, and such a statement provides actual notice of the intention to a would-be subsequent creditor. Furthermore, equitably speaking, it would have behooved ITT to have done a little checking before making its new loan. Any lender who makes a future advance without also investigating the state of the collateral at the time of the advance is asking for trouble.

*Id.* at 5.

The flaw in VFHG's argument is that *ITT* assumes that any subsequent creditor reviewed the security agreement in question. Indeed, our analysis would be completely different had VFHG secured its loan to Haynes with the 2013 tobacco crop as collateral *because* it saw no future advances clause within the June 25 security agreement. But that is simply not the case here. Indeed, *ITT* supports this reasoning:

> We have already pointed out why we believe a subsequent creditor should not be required to contact the original creditor when there is no written provision or indication that the security agreement covers future advances.

*Id.* at 4.

We agree with VFHG that the June 25 security agreement does not contain a future advances clause. VFHG argues if future advances are within the contemplation of the parties, a security agreement must have a future advances clause pursuant to KRS 355.9-204(3) and Official Comment 5 to UCC § 9-204.[7] However, VFHG does not make that argument because it relied upon the absence of a future advances clause in the June 25 security agreement in lending funds to Haynes. Indeed, VFHG was not aware of the security agreement at all prior to filing the instant action. The actual notice of possible future advances to any would-be subsequent creditor is provided by the future advances clause appearing in the security agreement rather than the financing statement. *First National Bank of Grayson v. Citizens Deposit Bank and Trust*, 735 S.W.2d 328, 331 (Ky. App.

---

[7] Official Comment 5 to UCC § 9-204 reads:

> **Future Advances; Obligations Secured.** Under subsection (c) collateral may secure future as well as past or present advances if the security agreement so provides. This is in line with the policy of this Article toward security interests in after-acquired property under subsection (a). Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. This Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral.

-10-

1987).[8]  The record before us indicates that, not only was VFHG unaware of FTW's prior-filed financing statement, but as a result, VFHG also made no attempt to obtain *any* security agreement between Haynes and FTW or otherwise investigate the state of the collateral.   Pursuant to *ITT*, such inaction was to VFHG's peril.  We are accordingly unpersuaded by VFHG's attempt to argue the necessity of a future advances clause in hindsight.

### Conclusion

"If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer*, 197 S.W.3d at 103.  Stated differently, if we agree with the circuit court's ultimate conclusion, but not the reasoning or legal basis behind that conclusion, we may affirm on any basis supported by the record.  Such is the case here.  VFHG failed to investigate the state of Haynes' tobacco crop as collateral prior to issuing the loan.  Its legal arguments after the fact are without merit and

---

[8] *See* Official Comment 7 to UCC § 9-204, which provides that a future advances clause need not be included in a financing statement:

> **Financing Statements.**  The effect of after-acquired property and future advance clauses as components of a security agreement should not be confused with the requirements applicable to financing statements under this Article's system of perfection by notice filing.  The references to after-acquired property clauses and future advance clauses in this section are limited to security agreements.  There is no need to refer to after-acquired property or future advances or other obligations secured in a financing statement.

cannot correct this error. Accordingly, the judgment of the Woodford Circuit

Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Cassie W. Barnes
Versailles, Kentucky

BRIEF FOR APPELLEE JERRY
RANKIN, d/b/a FARMERS
TOBACCO:

Lisa Koch Bryant
Louisville, Kentucky