RENDERED:  MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0216-MR

WILLIAM "SCOTT" ALBRIGHT          APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 19-CI-005732

BRIAN ROYSE          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  William "Scott" Albright appeals from the Jefferson Circuit Court's January 26, 2024, order granting summary judgment and dismissing his malicious prosecution action against Brian Royse, a homicide detective with Louisville Metro Police Department (LMPD).  After careful review of the briefs, record, and law, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The underlying malicious prosecution claim arises from Detective Royse's actions regarding the July 8, 2015, shootings of brothers Cameron and Kyle Pearson. Albright was indicted for the murder of Cameron and for first-degree assault of Kyle, but the charges were subsequently dismissed on immunity grounds pursuant to Kentucky Revised Statutes (KRS) 503.085. KRS 503.085 provides that a person who uses force as permitted in KRS 503.050, for use of physical force in self-protection, or KRS 503.070, for protection of another, "is justified in using such force and is immune from criminal prosecution[.]" We begin by reviewing the events of the shooting.

In 2015, Albright owned and operated a gun store located at 5410 Valley Station Road in Louisville, Kentucky. The store was one of several businesses that surrounded, on three sides, a shared parking lot. Nearby was a gas station where Amanda Waits, Cameron and Kyle's sister, arranged to meet Kyle, who days before had stolen Cameron's firearm. Amanda was accompanied by her husband and Cameron. When confronted by his brother, Kyle, who was armed with Cameron's gun, fled to the shared parking lot. His family pursued, Cameron on foot and Amanda and her husband in their car. While in the parking lot, Kyle fired the weapon at least once into the ground, and he threatened to take his own life and to shoot others.

Albright was in his shop on July 8, 2015, at approximately 4:00 PM, when he heard a suspected gun shot. Albright left his store and saw Kyle in the parking lot with a gun in his hand waving it around. Albright approached with his own handgun drawn and instructed Kyle to put his weapon down. Kyle put the gun to his own head before he started backing away. Cameron then jumped at Kyle, attempting to disarm him, and the two brothers ended up on the ground fighting for the gun, with Kyle on top and in control of the weapon. At least once during the brothers' struggle the barrel of the gun was pointed at Albright and Amanda, and Albright heard shots. When Kyle raised the gun a third time, Albright fired three or four shots in return until Kyle was down. Both brothers sustained gunshot wounds, although Albright asserts in these proceedings that Kyle shot Cameron, and Cameron later died of his injuries. A subsequent autopsy revealed that Cameron had been shot three separate times.

Detective Royse oversaw the investigation. In the hours that followed, police officers interviewed multiple witnesses who corroborated the salient facts that Kyle had fired his gun prior to Albright's intervention and that Kyle thereafter pointed and fired in Albright's direction. Detective Royse personally interviewed Albright, who asserted that he had acted out of concern for himself and others. Albright was released without charges. At an unknown date,

Detective Royse turned over his investigative file to the Commonwealth Attorney's Office, as he asserts he was required to do.

Assistant Commonwealth's Attorney John Balliet handled the Albright case. In his deposition, he stated generally that a detective could request that the Commonwealth's Attorney take a criminal matter directly to the grand jury, bypassing district court and a probable cause hearing. In those cases, the detective would provide a file for the prosecutor to review and to decide if he or she wanted to pursue charges. He recalled that the Albright case was a direct submission.

Balliet asserted that he would have reviewed all of the materials provided by Detective Royse. He recalled that there was a lot of video in the case, that he reviewed Albright's interview, and that he met with witnesses, including Amanda and Kyle. He stated that after his review, he decided to charge Albright. Balliet was aware of the immunity statute, but he stated that he did not believe that Albright had a strong defense claim. Balliet could not remember if he discussed the matter with Detective Royse, but he stated it did not make any difference to him if Detective Royse agreed with his assessment. As he explained in his deposition:

> [Q]uite frankly, I understand why [Albright] might have
> felt threatened by the guy who had the gun in his hand.
> And if all he had done was, you know, get to a point
> where he thought that maybe he needed to protect

himself against that person, I might have been okay with that. My problem was that they actually – you know, the bigger of the two, Kyle, who was the younger of the two, had this gun, and he had stolen it from his older brother and didn't want to give it back, had told everybody he was going to shoot himself. And the older brother didn't want him to shoot himself with his gun, and he tried to stop him. He actually – there was a point, I think, where he shot into the ground and then put the gun to his head as he was backing up. And I don't think – I don't think Cameron wanted that to happen, [a]nd he basically grabbed the gun and tried to stop his brother from shooting himself, and they wrestled and ended up on the ground. And when Albright basically said, "Drop the gun, or I'm going to shoot," there was another shot from the gun, and he started firing. That was a problem. He was talking about defending the people in the area and defending the brother, and yet he shot four or five times, and he killed the brother that tried to stop the younger brother from shooting himself. He killed him. Three shots. I thought that – I thought that self-defense against the brother was a complete stretch, and I've never – I've never questioned that.

On September 16, 2015, Detective Royse emailed Balliet regarding an inquiry from a detective who was working a case against Kyle for the theft of Cameron's firearm, asking if it was an issue to proceed with those charges. Detective Royse indicated in the email that he had no objection but wanted Balliet's input. Balliet responded:

[w]e've discussed the brother's liability and we believe that the Attorney General should come in and prosecute the brother for whatever he is responsible for. What a jerk! He actually caused his own brother to be killed by another nut acting like a one-man private police force. But we believe that we can't talk out of both sides of our

-5-

mouth on this. We have a conflict of interests but [the detective] should submit his documents to me and I'll recommend that we pass those along to the [Attorney General]. It's a good question that needs a responsible answer.

On September 21, 2015, Detective Royse submitted a document titled "Case Progress Worksheet Commonwealth's Attorney." Therein, he identified Albright in the section for "Defendant Information" and listed two charges, murder and attempted murder. In a box titled "Testimony Information," he wrote:

> On July 08, 2015, at approximately 1601 hours. [LMPD] responded to a report of a shooting which had occurred in the parking lot at 5410 Valley Station Road. Upon officers' arrival, two victims were located suffering from multiple gunshot wounds. Both victims were transported to University of Louisville Hospital where Victim #1[, Cameron] succumbed to his injuries and was pronounced deceased. Victim #2[, Kyle] was listed in critical condition. The Defendant was still on scene and was brought to the Homicide Office where he was advised of his *Miranda*[1] Rights and gave a recorded statement. The Defendant, who is the owner of a nearby gun store, stated he was inside the business when he heard both victims arguing in the parking lot. The Defendant, who was armed with a handgun, exited the business and observed one of the victims with a handgun. Both victims then engaged in a physical struggle over possession of the handgun. The Defendant verbally engaged the victims before firing multiple shots, striking both victims. It should be noted the deceased victim was unarmed and the Defendant was able to identify which victim was armed and which was unarmed. The Defendant's statements were consistent with multiple

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

witness accounts and by surveillance video[]s obtained from nearby businesses.

On September 24, 2015, Detective Royse testified to the grand jury under subpoena. He did not inform the grand jurors that Kyle had fired the gun multiple times, that there were other individuals in the area, that Albright was returning fire, or that Albright was protecting himself and others. Detective Royse explained that he did not have the authority to decide charges and that his testimony was truthful and crafted to meet the elements of the charges Balliet elected to seek.

As stated above, the grand jury returned an indictment on charges of murder and first-degree assault.[2] Albright moved to dismiss the criminal action citing immunity. The court agreed and dismissed the action in an August 11, 2016, order, which this Court affirmed on appeal. *Commonwealth v. Albright*, No. 2016-CA-001352-MR, 2018 WL 1770328 (Ky. App. Apr. 13, 2018) (unpublished).

Albright filed the underlying malicious prosecution action against Detective Royse on September 18, 2019. After discovery, Detective Royse moved for summary judgment on October 18, 2023. Albright argues he satisfied his burden of proof where the evidence established that Detective Royse withheld exculpatory information from the Case Progress Worksheet he submitted to Balliet

---

[2] Jefferson Circuit Court, Action No. 15-CR-002519.

and that Balliet considered Detective Royse's opinions in making prosecutorial decisions. By a January 26, 2024, order, the court granted summary judgment and dismissed the action. This appeal followed.

**STANDARD OF REVIEW**

> When a trial court grants a motion for summary judgment, the standard of review for an appellate court is de novo because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Kentucky Rules of Civil Procedure (CR)] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955). "If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

*Martin v. Wallace*, 651 S.W.3d 753, 756-57 (Ky. 2022).

**ANALYSIS**

To succeed on a claim of malicious prosecution, Albright must establish that:

1) the defendant initiated, continued, or procured a criminal . . . judicial proceeding . . . against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; . . .

4) the proceeding, . . . terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

To meet the procurement element, Albright must prove that Detective Royse was the proximate and efficient cause of putting the law in motion against him. *Id.* at 12. In *Martin*, the Supreme Court of Kentucky held that a police officer procures a criminal proceeding if the officer induces the prosecutor to commence the proceedings by providing inaccurate, false, or misleading information. *Id.* Concluding that Detective Royse turned over the entire investigative file to Balliet and that Balliet made the independent decision to charge Albright, the court held that Albright had not met his burden of proof.

On appeal, Albright renews his argument that Detective Royse was the proximate and efficient cause of putting the law in motion against him because he withheld exculpatory evidence from Balliet, specifically from the Case Progress

Worksheet he prepared, causing Balliet to believe that murder and first-degree assault charges were merited. Specifically, Albright takes issue with the following omissions from the Case Progress Worksheet's factual narrative: that prior to Albright's intervention Kyle both fired the gun and pointed it at both his sister and Albright, that a witness saw Kyle shoot Cameron, and that Cameron's autopsy results supported that witness's account. Albright also argues that the evidence refutes the court's determination that Detective Royse turned over the entire investigative file and that the court disregarded the emails between Detective Royse and Balliet, which he argues established that Balliet considered his opinions in making prosecutorial decisions.

Detective Royse disputes that the Case Progress Worksheet was a recommendation of charges. Rather, he states that the purpose of the document was to summarize, for the grand jury, the information relevant to support the charges Balliet independently elected to seek based on his review of the entire investigative file and his follow up with witnesses. He further asserts that Albright's claim that he misled Balliet with this particular document is incredulous and contrary to all evidence. In support, Detective Royse cites Balliet's deposition testimony, in which he testified that he would have reviewed everything given to him, that he specifically reviewed Albright's interview, and that he spoke with witnesses, including Amanda, who told police that Kyle shot towards her and

-10-

Albright. Balliet stated that based on everything he reviewed, he concluded that Albright's actions were not justified, that he alone made the decision to prosecute, and that he continued to stand by that decision even though the circuit and appellate courts reached a contrary conclusion.

We agree with Albright that the purpose of the Case Progress Worksheet is not clear from the record.[3] However, whether the document is Detective Royse's application for charges, as Albright contends, or merely a summary provided to the grand jury in support of the charges elected by the prosecutor, as Detective Royse argues, is immaterial. Albright does not claim that Detective Royse withheld the various witness statements that undisputedly contain the facts he asserts were omitted from the Case Progress Worksheet. As for the autopsy, beyond citing that the exam itself occurred the day after the shooting and thereby inferring it was available to turn over to Balliet from the beginning, Albright likewise does not claim that Balliet did not receive the report.[4]

---

[3] From our review of the record, neither Detective Royse nor Balliet identified the specific document as the grand jury form they referred to as a CATCH sheet, and Balliet stated that, although detectives did prepare them sometimes, that it was his practice to craft his own CATCH sheet.

[4] Moreover, contrary to Albright's claims, the autopsy does not resolve who shot Cameron. The report merely sets out that Cameron was shot three times and that the projectiles entered his body on his left side into his shoulder, chest, and lung, and moved left to right, front to back and downward. And, although Albright asserts that security video establishes that he was to Cameron's right, making it logical that Kyle shot Cameron, the video is of too poor quality to establish Cameron's orientation. Additionally, Albright's contention that he was to Cameron's right, placing Cameron on his back, is contrary to his statements to Detective Royse that Cameron was laying on his stomach and that he was not sure if he had shot Cameron.

-11-

We reject Albright's contention that not including readily available information on the Case Progress Worksheet is analogous to withholding exculpatory evidence or that it constitutes misleading Balliet in order to induce a prosecution. We also reject the argument that Detective Royse's email to Balliet inquiring about whether charges should be pursued against Kyle creates a reasonable inference he had any influence on whether charges were brought against Albright. Accordingly, Albright has failed to establish the first element necessary for his claim of malicious prosecution, and the court did not err in granting summary judgment to Detective Royse.

**CONCLUSION**

For the forgoing reasons, the judgment of Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Garry R. Adams
Abigail V. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Jefferson County Attorney

Richard Elder
Kristie B. Walker
Assistant Jefferson County Attorneys
Louisville, Kentucky